**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| **ADVANCED MICRO TARGETING, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **LET THE VOTERS DECIDE, LLC** ) | |
| **Registered Agent for Service of Process:** ) | |
| **Michael Gnesin** ) | |
| **350 E. Las Olas Blvd. 1750** ) | |
| **Fort Lauderdale, Florida 33301** ) | |
| ) | |
| **-and-** ) | |
| ) | |
| **VORTEX ELITE, LLC** ) | |
| **Registered Agent for Service of Process:** ) | **Case No.** 4:25-cv-00881 |
| **Incorp Services, Inc.** ) | |
| **3458 Lakeshore Drive** ) | **JURY TRIAL DEMANDED** |
| **Tallahassee, Florida 32312** ) | |
| ) | |
| **Defendants.** ) | |

---

**VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,**
**INJUNCTIVE RELIEF, AND DAMAGES**

---

Plaintiff Advanced Micro Targeting, Inc. ("AMT" or "Plaintiff"), by and through the

undersigned counsel, for its Verified Complaint for Temporary Restraining Order, Injunctive

Relief, and Damages against Defendants Let the Voters Decide, LLC ("LTVD") and Vortex Elite,

LLC ("Vortex") (collectively "Defendants"), states and alleges as follows:

<u>**NATURE OF THIS ACTION**</u>

1.      AMT is a company that specializes in running political initiatives and campaigns

of all sizes and scopes. AMT offers ballot qualification, petition campaign, voter outreach,

grassroots and grass tops organizing, increasing voter turnout, and micro-targeted direct mail

services to clients across the country, including in Missouri. To that end, AMT maintains a team of trained individuals who have experience in political initiatives and campaigning, and who work directly with voters to obtain signatures for petitions to support various ballot initiatives and candidates.

2.      LTVD and Vortex are companies that also specialize in political strategy, initiative qualification, campaigns, and voter outreach. LTVD and Vortex are a director competitors of AMT.

3.      LTVD and Vortex have launched an intentional and malicious effort to interfere with AMT's operations in Missouri and to dismantle AMT's Missouri workforce.

4.      Specifically, Defendants have embarked on a campaign to coerce AMT's employees (many who are based in Columbia, Kansas City, Springfield, and St. Louis, and all of whom have employment agreements with various restrictive covenants) to leave their employment with AMT and to work for LTVD and/or Vortex in violation of their contracts. As of the date of this filing, Defendants have successfully poached at least 18 employees from AMT's Missouri operations.

5.      Further, Defendants have offered to pay AMT's employees cash to disparage AMT, to participate in a smear campaign against the company, to leave their employment with the company, and to convince other AMT employees to leave their employment.

6.      Defendants' efforts are a part of a larger strategy to prohibit AMT from servicing its clients in Missouri, to prevent AMT from having a successful initiative relating to getting a congressional redistricting measure on the ballot, and to unfairly compete against AMT.

7.     Consequently, AMT brings this action to enjoin Defendants from their tortious interference in AMT's contracts, from unfairly competing with AMT, and for other damages and relief.

## PARTIES, JURISDICTION, AND VENUE

8.     Plaintiff AMT is a corporation organized under the laws of the state of Nevada with its principal place of business located at 5757 Alpha Road, Suite 501, Dallas, Texas 75240, and is therefore a citizen of the states of Nevada and Texas. AMT is registered and in good standing to conduct business in Missouri.

9.     Defendant LTVD is a limited liability company organized under the laws of the state of Florida that has its principal place of business at 52 Riley Road #305, Celebration, Florida 34747.

10.     Defendant Vortex is a limited liability company organized under the laws of the state of Florida that had its principal place of business at 8347 NW 54th Street, Miami, Florida 33166.

11.     Defendants conduct substantial and continuous business operations throughout the state of Missouri.

12.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interest.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because the events or omissions giving rise to these causes of action occurred, in whole or in part, in this District.

## <u>ALLEGATIONS COMMON TO ALL COUNTS</u>

**AMT, LTVD, AND VORTEX ARE DIRECT COMPETITORS**

14. AMT is a company that supports its clients by providing strategy advice, targeting and analytics, voter contact and outreach, and services related to running successful political campaigns and initiatives to clients across the country, including in Missouri.

15. AMT's workforce consists of a skilled set of employees who serve as voter contact specialists, petitioners, canvassers, team leaders, and project managers for the company's various projects across the country.

16. Part of the services AMT provides to its clients includes signature gathering on petitions to support various ballot initiatives.

17. Like AMT, LTVD and Vortex are in the political initiative and campaign business, and also offer petition campaign, voter outreach, and ballot initiative support to clients across the country, including in the state of Missouri.

**AMT LEADS INITIATIVE TO GET REDISTRICTING ON THE MISSOURI BALLOT**

18. One of AMT's ongoing projects involves working on behalf of a client to gather signatures to support a petition to place congressional redistricting on the Missouri ballot.

19. In connection with this initiative, AMT hired and assigned a specific group of employees to assist with supporting the project in Missouri, connecting with voters, and obtaining the signatures necessary to support the ballot measure.

20. These employees included, among others, the following individuals (referred to collectively hereinafter as "Former AMT Employees"): Darryll Anderson, Anita Beauchan, Kevin Brefford, Amanda Campbell, Jeffrey Clayton, Robert Crane, Robert Davenport, Sally Davis,

Jennifer Deborde, Adam Ellis, Mary Hall, Collins McDonald, Raomel Morrison, Byron Mullen, Nelson Ortiz, Richard Robinson, Derrick Theoc, and Yuri Usenko.

21.     Upon their hire and in consideration of their employment, each of the Former AMT Employees executed an employment agreement with various restrictive covenants, including but not limited to conflict of interest, confidentiality, non-competition, employee non-solicitation, and customer non-solicitation provisions.

22.     The Former AMT Employees' agreements are substantially similar and include identical material provisions. These agreements will be referred to herein as "Former AMT Employee Agreements" and are attached as exhibits hereto and incorporated as though fully set forth herein. *See* **Exhibit 1**, Anderson Agreement, **Exhibit 2**, Beauchan Agreement, **Exhibit 3**, Brefford Agreement, **Exhibit 4**, Campbell Agreement, **Exhibit 5**, Clayton Agreement, **Exhibit 6**, Crane Agreement, **Exhibit 7**, Davenport Agreement, **Exhibit 8**, Davis Agreement, **Exhibit 9**, Deborde Agreement, **Exhibit 10**, Ellis Agreement, **Exhibit 11**, Hall Agreement, **Exhibit 12**, McDonald Agreement, **Exhibit 13**, Morrison Agreement, **Exhibit 14**, Mullen Agreement, **Exhibit 15**, Ortiz Agreement, **Exhibit 16**, Robinson Agreement, **Exhibit 17**, Theoc Agreement, and **Exhibit 18**, Usenko Agreement.

23.     Specifically, each Former AMT Employee Agreement includes the following non-competition provision:

> **Section 7:** **Non-Competition**.     The Employee agrees that during Employee's term of active employment with Employer and for a period of one (1) year after the end of that term, Employee will not, directly or indirectly, as employee, owner, sole proprietor, partner, director, member, consultant, agent, founder, co-venturer or otherwise, solely or jointly with others engage in any business that is in competition with the business of Employer or the current or active clients of Employer within any geographic area in which Employer conducts its business, or give advice or lend credit, money or Employee's reputation to any natural person or business entity engaged in a competing business in any geographic area in which Employer conducts its business.

*See* Exhibits 1-18.

24.     The Former AMT Employee Agreements also include a non-solicitation provision, which provides as follows:

> **Section 8:   Non-Solicitation**.   Employee understands and agrees that any attempt on the part of Employee to induce other employees or contractors to leave Employer's employ, or any effort by Employee to interfere with Employer's relationship with its other employees and contractors would be harmful and damaging to Employer. Employee agrees that during Employee's term of employment with
>
> Employer and for a period of one (1) year after the end of that term, Employee will not in any way, directly or indirectly:
>
> > a.   Induce or attempt to induce any employee or contractor of Employer to quit employment or retainer with Employer;
> > b.   Otherwise interfere with or disrupt Employer's relationship with its employees and contractors;
> > c.   Discuss employment opportunities or provide information about competitive employment to any of Employer's employees or contractors; or
> > d.   Solicit, entice, or hire away any employee or contractor of Employer for the purpose of an employment opportunity that is in competition with Employer.
>
> This non-solicitation obligation as described in this section will be limited to employees or contractors who were employees or contractors of Employer during the period that Employee was employed by Employer.
>
> During the term of Employee's active employment with Employer, and for one (1) year thereafter, Employee will not divert or attempt to divert from Employer any business Employer had enjoyed, solicited, or attempted to solicit, from its customers, prior to termination or expiration, as the case may be, of Employee's employment with Employer.

*See* Exhibits 1-18.

25.     In the Former AMT Employee Agreements, each Former AMT Employee agreed to injunctive relief as a remedy for breach of the contract:

> **Section 17.          Remedies/Dispute Resolution.**   In the event of a breach or threatened breach by Employee of any of the provisions of this Agreement, Employee agrees that Employer is entitled to a permanent injunction, in addition to and not in limitation of any other rights and remedies available to Employer at law or in equity, in order to prevent or restrain any such breach by Employee or by Employee's partners, agents, representatives, servants, employees, and/or any and all persons directly or indirectly acting for or with Employee.

*See* Exhibits 1-18.

**DEFENDANTS INTENTIONALLY INTERFERE WITH AMT'S CONTRACTS TO DERAIL OPERATIONS**

26.     Beginning on November 3, 2025, AMT Employees started resigning *en masse*.

27.     On or about November 3, 2025, AMT learned that Defendants had started a campaign to block the Missouri ballot measure AMT was undertaking in Missouri.

28.     Defendants' efforts went beyond merely blocking the measure.

29.     The scope of Defendants' conduct has only recently become clear to AMT, with AMT losing more and more employees to Defendants each day.

30.     Defendants, knowing that at least some of the Former AMT Employees had Employment Agreements with AMT, began an intentional and targeted raid of AMT's Missouri workforce.

31.     At least 18 AMT employees have resigned, and upon information and belief, are now working for LTVD and/or Vortex.

32.     In addition, Defendants sent text messages to AMT employees seeking "video testimonials" relating to AMT.  **Exhibit 19**, Solicitation Text Message.

33.     Defendants offered to pay the employees $250 for providing these testimonials. *See id.*

34.     On or about November 6, 2025, Defendants used these purported "video testimonials" to create a video smear campaign ("Smear Video") disparaging AMT that was widely shared across social media and disseminated to the public. **Exhibit 20**, Smear Video.

35.     The information disseminated in the Smear Video is false.

36.     Further, some of the individuals identified in the Smear Video were offered jobs by AMT, but never actually worked for AMT.

37.     In addition to their smear campaign, Defendants targeted AMT employees in person.

38.     On at least one occasion, an AMT employee was followed after work by two individuals who the AMT employee believed to be associated with Defendants. The two individuals asked the employee to quit her job with AMT and offered her $7,500 to resign.

39.     During that encounter, the two individuals also tried to get the AMT employee to disparage AMT, and they told her that they had "been going to all the different stores trying to find" AMT employees.

40.     After the AMT employee refused to provide disparaging information to the individuals, the individuals continued to harass her, followed her by car as she drove away, and caused the employee to have to take a circuitous route home out of fear.

41.     On another occasion, an employee of LTVD offered to pay AMT management $25,000 to leave the project.

42.     On or about November 10, AMT learned that multiple employees of LTVD had been offering to pay $20,000 per person to multiple AMT employees in Missouri in an effort to convince them to resign their employment with AMT.

**AMT SUFFERS IRREPARABLE HARM**

43.     Defendants' actions are a coordinated effort to interfere with AMT's ability to operate its business in the state of Missouri.

44.     Defendants' conduct has resulted, and will continue to result, in irreparable injury and harm to AMT, including without limitation, loss of customers, employees, good will, customer confidence, confidential business information, reputation, contracts with customers, referral sources, competitive advantage, and the conduct is also causing an unknown economic loss.

45. Defendants' wrongful conduct leaves AMT with little choice but to file this lawsuit seeking (i) a temporary restraining order, a preliminary injunction, and permanent injunctive relief to prevent irreparable harm to AMT's business; and (2) recovery of monetary damages (in an amount to be proven at trial) for the harm caused by Defendants. Indeed, Defendants' wrongful conduct falls squarely within the type of unfair competition that harms AMT specifically and American voters, businesses, and the economy in general. Unless halted immediately, Defendants' wrongful actions will continue to cause irreparable harm to AMT's business through unfair competition, unjustly enriching Defendants in the process.

## COUNT I: TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY AND CONTRACTUAL RELATIONS
### (Against All Defendants)

46. AMT incorporates by reference the allegations set forth in each of the foregoing paragraphs of this Verified Complaint as if fully set forth herein.

47. The Former AMT Employee Agreements are valid and enforceable contracts supported by adequate consideration.

48. Upon information and belief, Defendants had actual knowledge of the Former AMT Employee Agreements, as well as the restrictive covenants contained therein.

49. By resigning their employment to work for a direct competitor, the Former AMT Employees are in breach of their respective contracts with AMT.

50. By allowing, directing, and/or encouraging the Former AMT Employees to breach their respective contracts with AMT, Defendants have intentionally interfered with the contracts AMT had with the Former AMT Employees.

51. Defendants intentionally interfered with AMT's business expectancy with respect to its employees by contacting them to solicit their services away from AMT.

9

52.    Defendants had no justification for their intentional interference.

53.    AMT has suffered damages as a result of Defendants' conduct.

54.    The actions of Defendants as alleged in Count I were willful and malicious and demonstrate a complete indifference to, or a conscious disregard for, the rights of AMT entitling AMT to an award of punitive damages.

## COUNT II: BUSINESS DEFAMATION
### (Against All Defendants)

55.    AMT incorporates by reference the allegations set forth in each of the foregoing paragraphs of this Verified Complaint as if fully set forth herein.

56.    Defendants published the Smear Video widely on social media platforms accessible to AMT employees, customers, and the public in general.

57.    The statements made on the Smear Video specifically identified AMT and were false and defamatory.

58.    The publication of the Smear Video has caused irreparable harm to AMT's reputation and business operations.

59.    The actions of Defendants as alleged in Count II were willful and malicious and demonstrate a complete indifference to, or a conscious disregard for, the rights of AMT entitling AMT to an award of punitive damages.

## COUNT III: INJURIOUS FALSEHOOD
### (Against All Defendants)

60.    AMT incorporates by reference the allegations set forth in each of the foregoing paragraphs of this Verified Complaint as if fully set forth herein.

61.    Through their publication of the Smear Video, Defendants published a false statement about AMT that was harmful to AMT's interests.

62. By publishing the Smear Video, Defendants intended to harm the interests of AMT and cause pecuniary harm to AMT or should have recognized that the publication was likely to result in harm.

63. Defendants knew that the statements in the Smear Video were false or made in reckless disregard of their truth or falsity.

64. AMT has suffered damages as a result of Defendants' conduct.

65. The actions of Defendants as alleged in Count III were willful and malicious and demonstrate a complete indifference to, or a conscious disregard for, the rights of AMT entitling AMT to an award of punitive damages.

## COUNT IV: UNFAIR COMPETITION
### (Against All Defendants)

66. AMT incorporates by reference the allegations set forth in each of the foregoing paragraphs of this Verified Complaint as if fully set forth herein.

67. Defendants' conduct described herein constitutes an unfair method of competition.

68. Defendants wrongfully and intentionally interfered with AMT's contractual relationships with the Former AMT Employees in order to unfairly compete, gain a competitive advantage in the marketplace, and cause harm or otherwise be detrimental to AMT.

69. Defendants' conduct interfered with an continues to interfere with AMT's ability to conduct its business.

70. As a direct and proximate result of the acts and course of conduct of Defendants described herein, AMT has suffered and will continue to suffer irreparable harm and loss, in addition to damages.

71.     The actions of Defendants as alleged in Count III were willful and malicious and demonstrate a complete indifference to, or a conscious disregard for, the rights of AMT entitling AMT to an award of punitive damages.

**COUNT V: UNJUST ENRICHMENT**
**(Against All Defendants)**

72.     AMT incorporates by reference the allegations set forth in each of the foregoing paragraphs of this Verified Complaint as if fully set forth herein.

73.     As a result of their misconduct alleged in this Verified Complaint, Defendants have been unjustly enriched.

74.     The retention of these benefits by Defendants under the circumstances is inequitable and, therefore, Defendants should be required to disgorge their wrongful gains.

**PRAYER FOR RELIEF**

WHEREFORE, based on the foregoing, Plaintiff Advanced Micro Targeting, Inc. respectfully requests the Court grant the following relief:

(a)     temporary, preliminary, and permanent injunctive relief:

    (i)     enjoining Defendants (and all others acting in concert with them) from soliciting, supporting, or encouraging AMT employees to violate the terms of their Employment Agreements;

    (ii)     enjoining Defendants (and all others acting in concert with them) from interfering with contracts between AMT and AMT employees;

    (iii)     enjoining Defendants (and all others acting in concert with them) from employing AMT employees in violation of their Employment Agreements;

(iv)   requiring Defendants to immediately remove the Smear Video from all social media outlets, websites, electronic platforms, and any other locations in which the video has been published;

(v)   directly or indirectly making use of confidential, proprietary, trade secret information belonging to AMT.

(b)   that AMT be relieved of any obligation to post an injunction bond;

(c)   the entry of a judgment for monetary damages for Defendants' wrongful acts as are fair and reasonable, including actual damages, punitive damages, equitable relief, pre-judgment and post-judgment interest, costs, and attorneys' fees;

(d)   An award of such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff respectfully demands a trial by jury as to all claims asserted herein.

Respectfully submitted,


*/s/     Laura Bailey Brown*
Melody Rayl, MO Bar #60362
Laura Bailey Brown, MO Bar #62732
**FISHER & PHILLIPS, LLP**
4622 Pennsylvania Avenue, Suite 910
Kansas City, Missouri 64112
Phone: (816) 842-8770
Facsimile: (816) 842-8767
Email: mrayl@fisherphillips.com
Email: lkbrown@fisherphillips.com

ATTORNEYS FOR PLAINTIFFS

13

## <u>VERIFICATION</u>

I, Billy Rogers, President of Advanced Micro Targeting, Inc., being duly sworn on oath, according to law, state that the facts contained in the foregoing Verified Complaint for Temporary Restraining Order, Injunctive Relief, and Damages are true and correct to the best of my personal knowledge, information, and belief.

_____
Billy Rogers