# Exhibit 1

# EMPLOYMENT AGREEMENT

**THIS EMPLOYMENT AGREEMENT (the "Agreement"), dated as of this** <u>10th</u> **day of** <u>October</u>**, 2025**

**BETWEEN:**

<u>Advanced Micro Targeting, Inc.</u>
(the "Employer")

**- AND -**

<u>Darryll Anderson</u>
(the "Employee")

**BACKGROUND:**

A. The Employer is of the opinion that the Employee has the necessary qualifications, experience and abilities to assist and benefit the Employer in its business.

B. The Employer desires to employ the Employee and the Employee has agreed to accept and enter such employment upon the terms and conditions set out in this Agreement.

**IN CONSIDERATION OF** the matters described above and of the mutual benefits and obligations set forth in this Agreement, the receipt and sufficiency of which consideration is hereby acknowledged, the parties to this Agreement agree as follows:

**Section 1.** **Commencement Date and Term**. Employee will begin full-time employment with Employer as of the date of this Agreement first above written ("Commencement Date") for a petition field project in the state of Missouri ("Project") and continuing such full-time employment until the conclusion of the Project ("Term"). Employer reserves the right to relocate Employee to Employer projects around the country if deemed necessary by Employer on the terms and conditions required for the particular project. **Upon the execution of this Agreement any previous employment agreement between Employer and Employee for this Project or any previous project is deemed to be terminated.**

**Section 2.** **At Will Employment**. Employee shall be considered an "at will" Employee. Employer shall have the right to terminate Employee's employment with Employer at any time for any reason permitted under applicable law or for no reason. Employer shall have the right to terminate Employee's employment without any notice or compensation to the Employee other than wages owed for days of work already completed and **subject to the provisions of Sections 13 and 15**.

**Section 3.** **Job Title and Description**. Employer agrees to employ Employee as a **Canvasser**. Employee will be expected to perform the following job duties: Duties to include, but not limited to the following: arrive to work on time, comply with all Employer policies as may be outlined in Employer's employment manual (i.e. dress code, attendance, etc.) or otherwise communicated to Employee; complete all required paperwork as prescribed by Employer; have a detailed understanding of the

1

Project and related issues, perform petition field work that complies with Employer's quality standards and all applicable laws, and such other related duties as determined by Employer. **Such field work will necessarily include contact with dozens or hundreds of voters in the field on a daily basis.**

Employee agrees to be employed on the terms and conditions set out in this Agreement. The Employee agrees to be subject to the general supervision of and act pursuant to the orders, advice and direction of Employer.

Employee will perform any and all duties that are reasonable and that are customarily performed by a person holding a similar position in the industry or business of Employer.

Employer may in its sole discretion unilaterally and significantly change Employee's job title or duties. Employee agrees to abide by the Employer's rules, regulations, and practices, including those concerning workplace safety, work schedules, and sick leave, as they may from time to time be adopted or modified.

**Section 4: Employee Compensation**. Compensation paid to Employee for the services rendered by Employee as required by this Agreement (the "**Compensation**") will begin on the first day Employee actually begins work in the field on or after the Commencement Date. Compensation shall consist of an hourly regular rate of pay equal to Twenty-Two and 50 /**100 Dollars ($**22 . 50 **)** for each full hour Employee works in the field on the Project for up to 40 hours in a "work week", which is currently determined by Employer to be Saturday through Friday. Any earned overtime pay will be paid in accordance with applicable state and federal laws. **Employee shall not receive Compensation during periods of time when Employer is not working in the field for the Project or not logged in pursuant to Section 5 below.**

This Compensation will be payable twice per month while this Agreement is in force. **To the extent legally permissible, Employer is entitled to deduct from the Employee's Compensation, or from any other compensation in whatever form, any applicable deductions and remittances as required by law, including without limitation, Unauthorized Expenses pursuant to Sections 13 and 15**.

Employee understands and agrees that any additional compensation paid to Employee in the form of bonuses or other similar incentive compensation will rest in the sole discretion of Employer and that Employee will not earn or accrue any right to incentive compensation by reason of Employee's employment. Any such bonus or incentive compensation shall not be subject to the overtime rate.

**In no event shall Employee be entitled to any compensation for time or expenses traveling to or from the Project. In the event Employee resigns employment with Employer or is terminated prior to the end of the Project, Employee shall be solely responsible for making and paying for any and all travel arrangements from the Project back to Employee's permanent residence. Further, in the event Employee resigns employment with Employer or is terminated by Employer within seven (7) days of beginning work on the Project, the cost incurred by Employer for Employee's round-trip air fare and lodging during the period of Employee's work on the Project shall be deducted from Employee's compensation.**

2

AMT.MO.Canvasser.Traveler.091125.01

Case 4:25-cv-00881-DGK    Document 1-2    Filed 11/11/25    Page 3 of 14

Doc ID: bee883de408a845a1357ceb984955553d7c9d1aa

**Section 5: Duty to Devote Full Time; Breaks**. Employee agrees to devote full-time efforts, as an employee of Employer, to the employment duties and obligations as described in this Agreement. Due to the nature of Employer's projects, which primarily consists of petition field work, full-time hours shall be **six (6) days per work week and eight (8) hours per workday** and such hours may vary on a day-to-day basis and may vary based upon weather, available daylight, and such other factors as may be determined by Employer in its sole discretion. **Notwithstanding the foregoing, in no event shall Employee be permitted to work more than eight (8) hours during any workday without the express prior permission of Employer and Employee shall be solely responsible for ensuring that Employee does not work in excess of eight (8) hours during any workday.**

**Employee shall be permitted one (1) ten-minute paid rest break for every four (4) hours of work. In addition, Employee shall be required to take one (1) unpaid hour-long meal break during each full day of work and such meal break shall not count toward the up to eight (8) hours of work required of Employee for the workday. Employee shall do no work during the meal break period.**

**Throughout each workday (excluding the meal break), Employee shall be required to log in and report every 30 minutes the total number of signatures collected by Employee to that point in the workday. In the event Employee fails to timely log in and report such information every thirty minutes, Employee shall be considered "off the clock" during any such period of time for which Employee has not timely logged in and reported such information. Employee shall not be considered to be working again until such time as Employee logs in and reports such information and any such time "off the clock" shall not count toward the eight (8) hours of work required of Employee for the workday.**

**Section 6: Conflict of Interest**. During the term of Employee's active employment with Employer, it is understood and agreed that any business opportunity relating to or similar to Employer's actual or reasonably anticipated business opportunities (with the exception of personal investments in less than 5% of the equity of a business, investments in established family businesses, real estate, or investments in stocks and bonds traded on public stock exchanges) coming to the attention of Employee, is an opportunity belonging to Employer. Therefore, Employee will advise Employer of the opportunity and cannot pursue the opportunity, directly or indirectly, without the written consent of Employer, which may be withheld in Employer's sole discretion.

During the term of Employee's active employment with Employer, Employee will not, directly or indirectly, engage or participate in any other business activities that Employer, in its sole discretion, determines to be in conflict with Employer's business.

**Section 7: Non-Competition**. The Employee agrees that during Employee's term of active employment with Employer and for a period of one (1) year after the end of that term, Employee will not, directly or indirectly, as employee, owner, sole proprietor, partner, director, member, consultant, agent, founder, co-venturer or otherwise, solely or jointly with others engage in any business that is in competition with the business of Employer or the current or active clients of Employer within any geographic area in which Employer conducts its business, or give advice or lend credit, money or Employee's reputation to any natural person or business entity engaged in a competing business in any geographic area in which Employer conducts its business.

**Section 8: Non-Solicitation**. Employee understands and agrees that any attempt on the part of Employee to induce other employees or contractors to leave Employer's employ, or any effort by Employee to interfere with Employer's relationship with its other employees and contractors would be harmful and damaging to Employer. Employee agrees that during Employee's term of employment with

Employer and for a period of one (1) year after the end of that term, Employee will not in any way, directly or indirectly:

a. Induce or attempt to induce any employee or contractor of Employer to quit employment or retainer with Employer;
b. Otherwise interfere with or disrupt Employer's relationship with its employees and contractors;
c. Discuss employment opportunities or provide information about competitive employment to any of Employer's employees or contractors; or
d. Solicit, entice, or hire away any employee or contractor of Employer for the purpose of an employment opportunity that is in competition with Employer.

This non-solicitation obligation as described in this section will be limited to employees or contractors who were employees or contractors of Employer during the period that Employee was employed by Employer.

During the term of Employee's active employment with Employer, and for one (1) year thereafter, Employee will not divert or attempt to divert from Employer any business Employer had enjoyed, solicited, or attempted to solicit, from its customers, prior to termination or expiration, as the case may be, of Employee's employment with Employer.

**Section 9:** **Confidential Information**. Employee acknowledges that, in any position Employee may hold, in and as a result of Employee's employment by Employer, Employee will, or may, be making use of, acquiring or adding to information which is confidential to Employer ("Confidential Information") and the Confidential Information is the exclusive property of Employer.

The Confidential Information will include all data and information relating to the business and management of Employer, including but not limited to, proprietary and trade secret technology and accounting records to which access is obtained by Employee, including Work Product, Computer Software, Other Proprietary Data, Business Operations, Marketing and Development Operations, and Customer Information.

The Confidential Information will also include any information that has been disclosed by a third party to Employer and is governed by a non-disclosure agreement entered into between that third party and Employer.

The Confidential Information will not include information that:

a. Is generally known in the industry of Employer;

b. Is now or subsequently becomes generally available to the public through no wrongful act of Employee;

c. Was rightfully in the possession of Employee prior to the disclosure to Employee by Employer;

d. Is independently created by Employee without direct or indirect use of the Confidential Information; or

    e. Employee rightfully obtains from a third party who has the right to transfer or disclose it.

The Confidential Information will also not include anything developed or produced by Employee during the Employee's term of employment with Employer, including but not limited to, any intellectual property, process, design, development, creation, research, invention, know-how, trade name, trade-mark or copyright that:

    a. Was developed without the use of equipment, supplies, facility or Confidential Information of Employer;

    b. Was developed entirely on Employee's own time;

    c. Does not result from any work performed by Employee for Employer; and

    d. Does not relate to any actual or reasonably anticipated business opportunity of Employer.

**Section 10:**     **Duties and Obligations Concerning Confidential Information**. Employee agrees that a material term of Employee's contract with Employer is to keep all Confidential Information absolutely confidential and protect its release from the public through any medium, including social media. Employee agrees not to divulge, reveal, report or use, for any purpose, any of the Confidential Information which Employee has obtained or which was disclosed to Employee by Employer as a result of Employee's employment by Employer. Employee agrees that if there is any question as to such disclosure then Employee will seek out senior management of Employer prior to making any disclosure of Employer's information that may be covered by this Agreement.

Employee agrees and acknowledges that the Confidential Information is of a proprietary and confidential nature and that any disclosure of the Confidential Information to a third party in breach of this Agreement cannot be reasonably or adequately compensated for in money damages, would cause irreparable injury to Employer, would gravely affect the effective and successful conduct of Employer's business and goodwill, and would be a material breach of this Agreement.

The obligations to ensure and protect the confidentiality of the Confidential Information imposed on Employee in this Agreement and any obligations to provide notice under this Agreement will survive the expiration or termination, as the case may be, of this Agreement and will continue for a period of five (5) years from the date of such expiration or termination.

Employee may disclose any of the Confidential Information:

    a. To a third party where Employer has consented in writing to such disclosure; and

    b. To the extent required by law or by the request or requirement of any judicial, legislative, administrative or other governmental body.

If Employee loses or makes unauthorized disclosure of any of the Confidential Information, Employee will immediately notify Employer and take all reasonable steps necessary to retrieve the lost or improperly disclosed Confidential Information.

**Section 11:** **Ownership and Title to Confidential Information.** Employee acknowledges and agrees that all rights, title and interest in any Confidential Information will remain the exclusive property of Employer. Accordingly, Employee specifically agrees and acknowledges that Employee will have no interest in the Confidential Information, including, without limitation, no interest in know-how, copyright, trademarks or trade names, notwithstanding the fact that Employee may have created or contributed to the creation of the Confidential Information.

Employee waives any moral or equitable rights that Employee may have with respect to the Confidential Information.

Employee agrees to immediately disclose to Employer all Confidential Information developed in whole or in part by Employee during Employee's term of employment with Employer and to assign to Employer any right, title or interest Employee may have in the Confidential Information. Employee agrees to execute any instruments and to do all other things reasonably requested by Employer, both during and after Employee's employment with Employer, in order to vest more fully in Employer all ownership rights in those items transferred by Employee to Employer.

**Section 12:** **Return of Confidential Information.** Employee agrees that, upon request of Employer or upon termination or expiration, as the case may be, of this employment, Employee will turn over to Employer all Confidential Information belonging to Employer, including but not limited to, all documents, plans, specifications, disks or other computer media, as well as any duplicates or backups made of that Confidential Information in whatever form or media, in the possession or control of Employee that:

a. May contain or be derived from ideas, concepts, creations, or trade secrets and other proprietary and Confidential Information as defined in this Agreement; or

b. Is connected with or derived from Employee's employment with Employer.

**Section 13:** **Unauthorized Expenses. Employee is responsible for any and all expenses incurred without the prior express written approval of Employer or resulting from Employee's failure to abide by the terms and conditions of the Agreement ("Unauthorized Expenses"). Unauthorized Expenses include, without limitation, the following: any fines charged to Employer for Employee's failure to comply with all applicable laws, hotel/motel room or other temporary housing service charges, including without limitation, cleaning and damage fees; car rental charges for traffic violations occurring while using such rental car; car rental cleaning fees, damage fees and fuel charges; any costs incurred by Employer for flight, bus, taxi or other travel arrangements for Employee or any other expenses incurred due to, following, or resulting from, the resignation or termination of Employee (including all housing expenses and travel expenses to and from the location of the work site and Employee's primary residence); unauthorized credit or debit card charges; and any costs or expenses incurred by Employer in enforcing the terms and conditions of this**

**Agreement or in seeking reimbursement or remediation of any violations by Employee of the terms and conditions of this Agreement. Employer and Employee acknowledge and agree that any failure of Employee to return any property of Employer, including without limitation, completed voter registration cards, un-notarized petitions, ANY voter registration cards, petitions or other Work Product in Employee's possession, keys, palms, mobile devices, computers, phones, rental cars, etc., in a timely and undamaged manner, as determined by Employer in its sole discretion, shall be considered Unauthorized Expenses. The Employer is entitled to deduct from Employee's Compensation, or from any other compensation in whatever form, any applicable deductions and remittances as required by law, including without limitation, Unauthorized Expenses pursuant to this Section 13**. **Employer shall have the right in its sole discretion to withhold Employee's final paycheck for a period of up to fifteen (15) business days to determine the existence of any unpaid Unauthorized Expenses.**

_____ (signature: DaMon)

**Employee Signature**

<u>Section 14.</u>  <u>Contract Binding Authority</u>. Notwithstanding any other term or condition expressed or implied in this Agreement to the contrary, Employee will not have the authority to enter into any contracts or commitments for or on the behalf of Employer without first obtaining the express written consent of Employer.

<u>Section 15.</u>  <u>Smoking in Employer-Provided Rental Cars or Housing Prohibited</u>. **Employee is expressly prohibited from smoking tobacco or any other substance while using any rental car provided by Employer or while staying in any motel, hotel or other temporary housing provided by Employer. Pursuant to Section 13 of this Agreement, Employee shall be responsible for any and all fines, costs or charges assessed to Employer due to such smoking and such fines, costs or charges shall be deemed Unauthorized Charges as defined in Section 13. Typically, these fines, costs or charges can exceed $500.**

<u>Section 16</u>.  <u>Prohibited Conduct</u>. **(a) In the course of Employee's work for Employer, Employee shall not trespass on private property after being asked or instructed to leave such private property by law enforcement, private security, or any other agent for the owner of such private property. In the event Employee violates the foregoing, Employee shall be solely for all for costs incurred by Employee, legal or otherwise, and Employee shall indemnify and hold harmless Employer for any such costs incurred by either Employee or Employer.**

**(b) Employee shall not be under the influence of any controlled substance during work hours or when occupying Employer-provided transportation or housing. Employee acknowledges and agrees that Employer shall have the right in its sole discretion to require random drug tests and conduct Employer-provided housing and rental car inspections of Employee.**

7

AMT.MO.Canvasser.Traveler.091125.01

Case 4:25-cv-00881-DGK    Document 1-2    Filed 11/11/25    Page 8 of 14

Doc ID: bee883de408a845a1357ceb984955553d7c9d1aa

**(c)** Any illegal or fraudulent activity by Employee in the course of employment is expressly prohibited. In the event Employer determines that Employee has submitted fraudulent work product, Employee's employment will be immediately terminated and Employer may in its sole discretion turn such matters over to law enforcement. Employee acknowledges and agrees that in the event of any illegal or fraudulent activity or other gross misconduct by Employee in the course of employment, Employee shall, to the extent legally permissible, forfeit all unpaid or uncollected wages. Fraudulent work product shall include without limitation: (i) submitting fraudulent voter registrations, petition signatures or fraudulent voter interviews, (ii) submitting excessive petition signatures or voter interviews from unregistered voters, or (iii) falsely recording a voter as "not home" without actually visiting the voter's residence.

**(d)** Employee acknowledges and agrees that Employee is prohibited from publishing on any medium, including social media, anything which would reflect poorly on Employer or its clients, as determined by Employer in its sole discretion.

**(e)** Employee shall not carry or possess weapons of any kind, including without limitation, firearms or knives, when working on the Project or when occupying Employer-provided transportation or housing.

**Section 17.** **Remedies/Dispute Resolution.** In the event of a breach or threatened breach by Employee of any of the provisions of this Agreement, Employee agrees that Employer is entitled to a permanent injunction, in addition to and not in limitation of any other rights and remedies available to Employer at law or in equity, in order to prevent or restrain any such breach by Employee or by Employee's partners, agents, representatives, servants, employees, and/or any and all persons directly or indirectly acting for or with Employee.

**Employer and Employee expressly agree that, except as provided in the immediately preceding paragraph of this Agreement, all disputes arising out of this Agreement shall be resolved by arbitration in accordance with the following provisions. Either party must demand in writing such arbitration within ten days after the controversy arises by sending a notice to arbitrate to both the other party and to the American Arbitration Association (hereinafter referred to as "AAA"). The controversy shall then be arbitrated pursuant to the rules promulgated by the AAA at the AAA's offices located in Clark County, Nevada. The parties will select by mutual agreement the arbitrator or arbitrators (hereinafter collectively referred to as "arbitrator") to hear and resolve the controversy. The arbitrator shall be governed by the express terms of this Agreement and the laws**

**of the State of Nevada. The arbitrator's decision shall be final and binding on the parties and shall bar any suit, action, or proceeding instituted in any federal, state, or local court or administrative tribunal, including the right to bring or join a class or collective action or participate in a "class arbitration". Notwithstanding the preceding sentence, the arbitrator's judgment may be entered in any court of competent jurisdiction. These arbitration provisions shall survive the termination of this Agreement.**

**I UNDERSTAND THAT I AM VOLUNTARILY AGREEING TO ARBITRATE DISPUTES ARISING UNDER THIS AGREEMENT AND THAT I AM GIVING UP MY RIGHT TO A TRIAL BY JURY AND THE RIGHT TO JOIN A CLASS OR COLLECTIVE ACTION OR PARTICIPATE IN A "CLASS ARBITRATION".**



**Employee Signature**

**Section 18.** **Severability**. Employer and Employee acknowledge that this Agreement is reasonable, valid and enforceable. However, if any term, covenant, condition or provision of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, it is the parties' intent that such provision be changed in scope by the court only to the extent deemed necessary by that court to render the provision reasonable and enforceable and the remainder of the provisions of this Agreement will in no way be affected, impaired or invalidated as a result.

**Section 19.** **Notices**. Any notices, deliveries, requests, demands or other communications required here will be deemed to be completed when hand-delivered, delivered by agent, or three (3) days after being placed in the post, postage prepaid, to the parties at the following addresses or as the parties may later designate in writing:

a. **Employer:**

Name: Advanced Micro Targeting

Address: 5757 Alpha Rd., Suite 501, Dallas, TX 75240

b. **Employee:**

Name: Darryll Anderson

Address: 3015 Valley Ridge Rd Apt 223, Davenport Florida 33837

Email: stronghands343@yahoo.com

**Section 20.** **Modification of Agreement**. Any amendment or modification of this Agreement or additional obligation assumed by either party in connection with this Agreement will only be binding if evidenced in writing signed by each party or an authorized representative of each party.

**Section 21.** **Governing Law**. This Agreement will be construed in accordance with and governed by the laws of the state of Nevada.

**Section 22.** **Definitions**. For the purpose of this Agreement the following definitions will apply:

a. 'Work Product' means work product information, including but not limited to, work product resulting from or related to work or projects performed or to be performed for the Employer or for clients of the Employer, of any type or form in any stage of actual or anticipated research and development.
b. 'Computer Software' means computer software resulting from or related to work or projects performed or to be performed for the Employer or for clients of the Employer, of any type or form in any stage of actual or anticipated research and development, including but not limited to, programs and program modules, routines and subroutines, processes, algorithms, design concepts, design specifications (design notes, annotations, documentation, flowcharts, coding sheets, and the like), source code, object code and load modules, programming, program patches and system designs.
c. 'Other Proprietary Data' means information relating to the Employer's proprietary rights prior to any public disclosure of such information, including but not limited to, the nature of the proprietary rights, production data, technical and engineering data, test data and test results, the status and details of research and development of products and services, and information regarding acquiring, protecting, enforcing and licensing proprietary rights (including patents, copyrights and trade secrets).
d. 'Business Operations' means operational information, including but not limited to, internal personnel and financial information, vendor names and other vendor information (including vendor characteristics, services and agreements), purchasing and internal cost information, internal services and operational manuals, and the manner and methods of conducting the Employer's business.
e. 'Marketing and Development Operations' means marketing and development information, including but not limited to, marketing and development plans, price and cost data, price and fee amounts, pricing and billing policies, quoting procedures, marketing techniques and methods of obtaining business, forecasts and forecast assumptions and volumes, and future plans and potential strategies of the Employer which have been or are being considered.
f. 'Customer Information' means customer information, including but not limited to, names of customers and their representatives, contracts and their contents and parties, customer services, data provided by customers and the type, quantity and specifications of products and services purchased, leased, licensed or received by customers of the Employer.

10

AMT.MO.Canvasser.Traveler.091125.01
Case 4:25-cv-00881-DGK    Document 1-2    Filed 11/11/25    Page 11 of 14
Doc ID: bee883de408a845a1357ceb984955553d7c9d1aa

g.  'Termination Date' means the date specified in this Agreement or in a subsequent notice by either the Employee or the Employer to be the last day of employment under this Agreement. The parties acknowledge that various provisions of this Agreement will survive the Termination Date.

**Section 23.**     **General Provisions.**

Time is of the essence in this Agreement.

Headings are inserted for the convenience of the parties only and are not to be considered when interpreting this Agreement. Words in the singular mean and include the plural and vice versa. Words in the masculine mean and include the feminine and vice versa.

No failure or delay by either party to this Agreement in exercising any power, right or privilege provided in this Agreement will operate as a waiver, nor will any single or partial exercise of such rights, powers or privileges preclude any further exercise of them or the exercise of any other right, power or privilege provided in this Agreement.

This Agreement will inure to the benefit of and be binding upon the respective heirs, executors, administrators, successors and assigns, as the case may be, of the Employer and the Employee.

This Agreement may be executed in counterparts. Facsimile signatures are binding and are considered to be original signatures.

This Agreement constitutes the entire agreement between the parties and there are no further items or provisions, either oral or written. The parties to this Agreement stipulate that neither of them has made any representations with respect to the subject matter of this Agreement except such representations as are specifically set forth in this Agreement.

**Section 24.**     **Covid-19 Disclosures.**

**Employee knows and understands that Missouri has previously been under state emergency health orders for the COVID-19 virus and that such health concerns associated with the virus will continue.**

**Employee knows and understands that Employee's employment with Employer will necessarily include physically interacting with hundreds of voters per day in the field.**

**Given this knowledge and understanding, Employee knowingly and voluntarily accepts any COVID-19 associated risk to Employee's health or well-being that is associated with petition collection or other office or field work performed under this Agreement.**

**Employee hereby acknowledges and agrees that Employee has received, read, and will comply with Employer's COVID-19 Health and Safety Procedures, which have been developed by Employer to promote and protect, to the best of its ability, the health and safety of all its employees in the workplace during the COVID-19 Pandemic.**

**According to the Centers for Disease Control, COVID-19 is a new disease that there is limited information regarding risk factors for the disease. Based upon currently available information**

11
AMT.MO.Canvasser.Traveler.091125.01
Case 4:25-cv-00881-DGK     Document 1-2     Filed 11/11/25     Page 12 of 14
Doc ID: bee883de408a845a1357ceb984955553d7c9d1aa

and clinical expertise, older adults and people of any age who have serious underlying medical conditions might be at higher risk for severe illness from COVID-19.

Absent the aforementioned risk factors, Employee acknowledges and agrees there remains uncertain and unquantified risk to Employee's health by physically interacting with the public in the midst of the COVID-19 Pandemic.

By accepting employment with Employer for the Project, Employee assumes all such risks related to COVID-19 and Employee hereby waives any claims for damages, reimbursement, liability, or other relief against Employer and its directors, officers, employees, agents, and contractors, as well as against Employer's client (including any of its affiliated organizations and any directors, officers, employees, agents, contractors, and donors) for illness, hospitalization, medical services, pharmaceuticals, rehabilitation, or death that may be attributable to Employee's employment under this Agreement.

Notwithstanding the foregoing, nothing contained herein shall prevent Employee from filing state-based workers compensation claims for injuries sustained in the workplace.

_____
Employee Signature

**Section 25.        Lodging Policy.**

All employees who are housed by Employer are paired with a roommate. Smoking tobacco, consumption of illegal substances, and consumption of alcohol are prohibited at Employer-provided lodging. Employees are advised not to keep valuables in Employer-provided lodging, and each employee will be responsible for the safety of valuable items kept in their room. Visitors coming to see an employee staying in Employer-provided lodging should meet them in the outside area and are not allowed to visit the rooms. This includes co-workers. Overnight visits/visitors are not permitted. Employees are advised to keep noise levels to a minimum so as not to affect the neighboring rooms. Employees are advised to keep the Employer-provided lodging clean and in the best hygienic condition. This is directly linked to the health and safety of occupants. Employees may come from diverse backgrounds and are advised to live at the Employer-provided lodging accommodation with respect for each other. Employee's failure to abide by the policies set forth in this Section 25 shall constitute a material breach of this Agreement.

**EMPLOYER:**

Denise Cantor                            _Denise Cantor_____           10 / 09 / 2025
Print                                    Sign                                Date

**EMPLOYEE:**

Darryll Anderson                         _____           10 / 03 / 2025
Print                                    Sign                                Date

 **Audit trail**

| | |
|---|---|
| Title | Missouri Contract |
| File name | AMT.MO.Canvasser.Traveler.091125.01.docx |
| Document ID | bee883de408a845a1357ceb984955553d7c9d1aa |
| Audit trail date format | MM / DD / YYYY |
| Status | ● Signed |

## Document History

**SENT** — 10 / 04 / 2025 00:22:15 UTC — Sent for signature to Darryll Anderson (stronghands343@yahoo.com) and Denise Cantor (hr@amtpolitics.us) from hr@amtpolitics.us
IP: 72.235.226.146

**VIEWED** — 10 / 04 / 2025 00:23:42 UTC — Viewed by Darryll Anderson (stronghands343@yahoo.com)
IP: 173.169.127.95

**SIGNED** — 10 / 04 / 2025 00:32:11 UTC — Signed by Darryll Anderson (stronghands343@yahoo.com)
IP: 173.169.127.95

**VIEWED** — 10 / 10 / 2025 04:00:26 UTC — Viewed by Denise Cantor (hr@amtpolitics.us)
IP: 72.235.226.146

**SIGNED** — 10 / 10 / 2025 04:00:42 UTC — Signed by Denise Cantor (hr@amtpolitics.us)
IP: 72.235.226.146

**COMPLETED** — 10 / 10 / 2025 04:00:42 UTC — The document has been completed.

Powered by Dropbox Sign