IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| ADVANCED MICRO TARGETING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-00881-CV-DGK |
| | ) | |
| LET THE VOTERS DECIDE, LLC, and | ) | |
| VORTEX ELITE, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DENYING MOTION FOR A TEMPORARY RESTRAINING ORDER**

This case involves an alleged dispute between competing companies that employ election canvassers in Missouri and other states. Plaintiff Advanced Micro Targeting, LLC, ("AMT") alleges that it hired several employees to assist in getting a congressional redistricting measure on a ballot here in Missouri. But according to AMT, Defendants Let the Voters Decide, LLC, and Vortex Elite, LLC, allegedly poached many of their employees and created a false and defamatory video about AMT's business practices. On November 11, 2025, AMT filed a five-count lawsuit under Missouri state law against Defendants, alleging claims for: (1) tortious interference with business expectancy and contractual relations; (2) business defamation; (3) injurious falsehood; (4) unfair competition; and (5) unjust enrichment. ECF No. 1. AMT seeks injunctive relief as well as damages. *See id.* at 12–13.

Now before the Court is AMT's combined Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction. ECF No. 3. Among other things, AMT asks the Court to enjoin Defendants from interfering with and/or employing AMT's employees and order them to remove the allegedly defamatory video.

After carefully reviewing the motion and the existing record, the Court holds AMT has not

met its burden for the Court to issue a TRO. That portion of the motion is DENIED.[1] The Court will decide the preliminary injunction motion after Plaintiff serves Defendants, Defendants respond to the preliminary injunction motion, and the Court holds a hearing (if necessary).

## Background

Plaintiff's allegations are detailed in its Verified Complaint, motion, and suggestions in support of the motion. ECF Nos. 1, 3, 4. The allegations will not be repeated here.

## Standard of Review

A TRO is an "extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation omitted). The Eighth Circuit applies the same standards to a request for a preliminary injunction and a TRO. *See S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989).

The factors this Court considers in any such request are: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury in granting the injunction will inflict on the other party; (3) the probability of the movant succeeding on the merits; and (4) the public interest." *Phelps-Roper v. Nixon*, 509 F.3d 480, 484 (8th Cir. 2007) (citing *Dataphase Sys. Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc)).

## Discussion

Relying on the Verified Complaint and its attachments, AMT argues that it has satisfied all the factors above. The Court addresses each of the factors below.

---

[1] Pursuant to Local Rule 7(g), AMT's counsel contacted the undersigned's courtroom deputy to request a TRO hearing. The Court finds that a hearing is unnecessary at this stage because the Court can decide the TRO portion of the motion on the papers. If AMT wishes to have a hearing on its preliminary injunction request after reviewing this order carefully and after the briefing is complete, it may reach out to the courtroom deputy again to schedule a hearing.

### I. AMT has not shown a threat of irreparable harm.

To succeed on a TRO motion, AMT must demonstrate that it "is likely to suffer irreparable harm." *Denali Summit, LLC v. Union Elec. Co.*, No. 24-3152, --- F.4th ---, 2025 WL 3000538, at *2 (8th Cir. Oct. 27, 2025). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). Irreparable harm must be certain and imminent such "that there is a clear and present need for equitable relief." *Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996). Possible or speculative harm is not sufficient. *See Local Union No. 884, United Rubber, Cork, Linoleum, & Plastic Workers of Am. v. Bridgestone / Firestone, Inc.*, 61 F.3d 1347, 1355 (8th Cir. 1995).

"Economic loss, on its own, is not an irreparable injury so long as the losses can be recovered." *DISH Network Serv. L.L.C. v. Laducer*, 725 F.3d 877, 882 (8th Cir. 2013). While proven losses of goodwill or reputational harm may constitute irreparable harm in some circumstances, *see Gen. Motors Corp.*, 563 F.3d at 319, conclusory, speculative, and/or unsubstantiated claims about the same do not suffice, *see MPAY Inc. v. Erie Custom Computer Applications, Inc.*, 970 F.3d 1010, 1020 (8th Cir. 2020). For example, it is not enough for a movant to simply claim that "harm to its goodwill and reputation is inevitable" from a defendant's actions. *Mpay Inc.*, 970 F.3d at 1020; *see also Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, 920 F.3d 1181, 1184 (8th Cir. 2019) ("With the burden on Management Registry, it was not error for the district court to require more evidence than just a discussion of general business principles and a series of assurances that its business would be irreparably harmed if it did not receive an injunction." (citation modified)).

Here, AMT falls well short of proving irreparable harm. It simply lists a series of

conclusory alleged business harms like goodwill, reputation, customer confidence, and lost customers without any factual or evidentiary support that Defendants' alleged actions have led—or are likely to lead—to these harms. And more fundamentally, even if AMT has suffered or is likely to suffer these alleged harms, it has not shown "that they are truly irreparable in the sense that they could not be addressed through money damages if [AMT] is successful following a trial on the merits." *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013); *see also Mgmt. Registry*, *Inc.,* 920 F.3d at 1184 ("But beyond just asking the district court to trust its assessment that these harms are unquantifiable, it never persuasively explained why money damages could not compensate it for these losses as well."). To the contrary, on the current record, it appears that its claims for lost customers, contracts, goodwill, etc. could be compensated by a damages award. *See Gen. Motors Corp.*, 725 F.3d at 895.

AMT has not come close to demonstrating irreparable harm, so this factor weighs heavily against issuing a TRO. And although AMT's failure to prove irreparable harm is fatal to its TRO request, *see Mgmt. Registry, Inc.*, 920 F.3d at 1184, the Court addresses the other factors for the sake of completeness. *See also Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) ("Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction.").

## II. AMT has not shown the balance of harms favors issuing a TRO.

AMT argues that there would be zero harm to Defendants if the Court enters a TRO because they are simply committing unlawful acts. On the other hand, according to AMT, it will suffer immense continuing harm if a TRO is not entered.

The Court disagrees with AMT's framing. To be sure, if Defendants' actions are unlawful, then issuing a TRO against them would not harm them. But as shown below, it is not

4

clear that AMT is likely to succeed on the merits of all claims. But more importantly, as shown above, AMT has not shown that they will suffer any irreparable harm if an injunction is not issued. They may suffer harm from Defendant's alleged actions, but even if it is wrongful, it appears that any continuing harm between now and final judgment could be compensated by a money judgment. *See Denali Summit, LLC*, No. 24-3152, 2025 WL 3000538, at *3 ("If Ameren were to prevail on the merits and if a permanent injunction were appropriate, then Denali Summit's encroachment during the interim period would be redressable with damages."). At best, this factor is neutral.

### III. AMT has shown the success on the merits factor slightly favors issuing a TRO.

AMT explains that the Verified Complaint demonstrates they are likely to succeed on all their claims.

AMT must show a "substantial likelihood of prevailing on the merits" of its claims. *See Phelps-Roper*, 509 F.3d at 485. "While an injunction cannot issue if there is no chance on the merits, the Eighth Circuit has rejected a requirement that a party seeking preliminary relief prove a greater than fifty per cent likelihood that he will prevail on the merits." *Id.* (internal citations and quotation marks omitted). At bottom, AMT must show it has a "fair chance of prevailing." *Id.* (quotation marks omitted).

AMT's Verified Complaint is rather conclusory and vague in many spots. For some of the allegations about wrongful conduct, the Verified Complaint does not clearly state which of AMT's alleged employees were approached by Defendants, when it occurred, or where it occurred. It also relies heavily upon information and belief without much factual sinew connecting the various scattershot allegations. And although it makes a broad claim that a video purportedly created by Defendants is "false," it does not provide any details about what is false in the video.

This concerns the Court because the video is nearly four minutes long with over a handful of individuals talking, and AMT makes no attempt to explain which statements are false. And the claim that the video is wholly false appears to be contradicted by the record because at least one of the statements—that AMT employees make $22.50—appears to be corroborated by the contracts that AMT submitted with the Verified Complaint. Moreover, several of the statements that AMT seems to be suggesting are factually false may be more appropriately characterized as puffery or opinion. At this stage, the Court is not saying that AMT's allegations are not true; it just seems that the facts may be more disputed than AMT is representing in its motion.

On the whole, AMT has probably shown that they may have a fair chance of prevailing on the merits of some of their claims (e.g., its tortious interference and similar claims), but they have shown less of a chance of prevailing on their claims related to the video and other alleged wrongs. That is, at least at this stage, they have shown a mixed likelihood of success on the merits of some—but not all—claims. Thus, this factor slightly favors issuing a TRO.

### IV. The public interest factor is neutral.

The Court finds that the public interest does not favor either granting or denying the TRO request. Thus, this factor does not weigh in favor of either side.

### V. AMT has not carried its burden.

As noted above, the irreparable harm factor weighs heavily against issuing a TRO. And although the likelihood of success on the merits factor slightly favors issuing a TRO, it is outweighed by the failure on the irreparable harm front. The remaining factors are neutral. So, after balancing the four factors, the Court holds that AMT has not clearly shown entitlement to the extraordinary and drastic remedy of an ex parte TRO.

## Conclusion

For the reasons discussed above, AMT's request for a TRO is DENIED. The Court will decide the preliminary injunction motion after Plaintiff serves Defendants, Defendants respond to the preliminary injunction motion, and the Court holds a hearing (if necessary).

**IT IS SO ORDERED.**

Date: <u>November 17, 2025</u>　　　　　　　　　　<u>/s/ Greg Kays　　　　　　　</u>
　　　　　　　　　　　　　　　　　　　　GREG KAYS, JUDGE
　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT