# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| ADVANCED MICRO TARGETING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-00881-CV-DGK |
| | ) | |
| LET THE VOTERS DECIDE, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DENYING AMENDED MOTION FOR A TEMPORARY RESTRAINING ORDER

This case involves an alleged dispute between competing companies that employ election canvassers in Missouri and other states. Plaintiff Advanced Micro Targeting, LLC ("AMT") alleges that it hired several employees to assist in getting a congressional redistricting measure on a ballot here in Missouri. But according to AMT, Defendants Let the Voters Decide, LLC ("LTVD"), Vortex Elite, LLC ("Vortex"), Synergy Wise Solutions, LLC ("Synergy"), and Onset Marketing, LLC ("Onset") allegedly misappropriated AMT's trade secrets, poached many of its employees, and created a false and defamatory video about AMT's business practices.

Earlier in the case, AMT filed a five-count lawsuit under Missouri state law against just LTVD and Vortex. ECF No. 1. AMT also filed a motion for a temporary restraining order and a preliminary injunction. ECF No. 3. The Court denied the motion for a temporary restraining order in large part because AMT had not demonstrated irreparable harm. ECF No. 7.

AMT then filed an Amended Verified Complaint that added Synergy and Onset as Defendants and two additional claims for misappropriation of trade secrets and civil conspiracy. ECF No. 8. AMT once again sought injunctive relief and damages. The Court then denied without prejudice AMT's preliminary injunction motion because the filing of the Amended

Verified Complaint mooted the motion that relied on the original complaint. *See* ECF No. 9.

Now before the Court is AMT's Amended Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction. ECF No. 10. Among other things, AMT asks the Court to enjoin Defendants from interfering with and/or employing AMT's employees, enjoin Defendants from using AMT's trade secrets, and order Defendants to remove the defamatory video.

After carefully reviewing the motion and the existing record, the Court holds AMT has not met its burden for the Court to issue a TRO. That portion of the motion is DENIED.[1]

The Court will decide the preliminary injunction motion after it is fully briefed. To that end, Defendants are ORDERED to file any opposition to the motion for a preliminary injunction on or before January 9, 2026. AMT shall then file a reply on or before January 23, 2026. The Court will then set a hearing—as necessary—after reviewing the briefing.

## Background

AMT's allegations are detailed in its Amended Verified Complaint, motion, and suggestions in support. ECF Nos. 8, 10, 11. The allegations will not be repeated here.

## Standard of Review

A TRO is an "extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation omitted and emphasis in original). The Eighth Circuit applies the same standards to a request for a preliminary injunction and a TRO. *See S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989).

---

[1] Pursuant to Local Rule 7(g), AMT's counsel contacted the undersigned's courtroom deputy to request a TRO hearing. Defendants LTVD, Vortex, and Synergy have opposed the request for an emergency hearing and request additional time to brief the issue. The Court finds that a hearing is unnecessary at this stage because the Court can decide the TRO portion of the motion on the papers.

The factors this Court considers in any such request are: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury in granting the injunction will inflict on the other party; (3) the probability of the movant succeeding on the merits; and (4) the public interest." *Phelps-Roper v. Nixon*, 509 F.3d 480, 484 (8th Cir. 2007) (citing *Dataphase Sys. Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc)).

## Discussion

Relying on the Amended Verified Complaint and its attachments, AMT argues that it has satisfied all the factors above.[2] The Court addresses each of the factors below.

### I. AMT has not shown a threat of irreparable harm.

To succeed on a TRO motion, AMT must demonstrate that it "is likely to suffer irreparable harm." *Denali Summit, LLC v. Union Elec. Co.*, No. 24-3152, --- F.4th ---, 2025 WL 3000538, at *2 (8th Cir. Oct. 27, 2025). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). Irreparable harm must be certain and imminent such "that there is a clear and present need for equitable relief." *Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996). Possible or speculative harm is not sufficient. *See Local Union No. 884, United Rubber, Cork, Linoleum, & Plastic Workers of Am. v. Bridgestone / Firestone, Inc.*, 61 F.3d 1347, 1355 (8th Cir. 1995).

---

[2] In its suggestions in support, AMT incorporates the arguments from its prior motion by reference. ECF No. 11 at 9 n.2. But incorporating arguments by reference violates the Initial Standing Order (the "ISO") because it is a way to circumvent the page limits. *See* ECF No. 5 at 5; *see also CPI Card Grp., Inc. v. Dwyer*, No. 17-CV-03983-SRN/BRT, 2019 WL 13235419, at *5 (D. Minn. May 14, 2019) ("Rule 10(c) of the Federal Rules of Civil Procedure provides that '[a] statement in a pleading may be adopted by reference in the same pleading or in any other pleading or motion,' but a memorandum or brief is not a pleading." (citing Fed. R. Civ. P. 7)). Thus, the Court does not consider any arguments raised in the previously denied motion that relied on the original complaint. This is also AMT's second ISO violation. *See* ECF No. 16 (documenting call to chambers that violated the ISO). Any future violations of the ISO will result in the Court dismissing AMT's case under Federal Rule of Civil Procedure 41(b) for failure to comply with the Court's orders or the imposition of monetary sanctions under the Court's inherent authority.

"Economic loss, on its own, is not an irreparable injury so long as the losses can be recovered." *DISH Network Serv. L.L.C. v. Laducer*, 725 F.3d 877, 882 (8th Cir. 2013). While proven losses of goodwill or reputational harm may constitute irreparable harm in some circumstances, *see Gen. Motors Corp.*, 563 F.3d at 319, conclusory, speculative, and/or unsubstantiated claims about the same do not suffice, *see MPAY Inc. v. Erie Custom Computer Applications, Inc.*, 970 F.3d 1010, 1020 (8th Cir. 2020). For example, it is not enough for a movant to simply claim that "harm to its goodwill and reputation is inevitable" from a defendant's actions. *MPAY Inc.*, 970 F.3d at 1020; *see also Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, 920 F.3d 1181, 1184 (8th Cir. 2019) ("With the burden on Management Registry, it was not error for the district court to require more evidence than just a discussion of general business principles and a series of assurances that its business would be irreparably harmed if it did not receive an injunction." (citation modified)). The same is true for the misappropriation of trade secrets. *See Cigna Corp. v. Bricker*, 103 F.4th 1336, 1346 (8th Cir. 2024); *MPAY Inc.*, 970 F.3d at 1020.

Like its Verified Complaint and original TRO motion, AMT falls well short of proving irreparable harm. AMT once again simply lists a series of conclusory alleged business harms like goodwill, reputation, customer confidence, and lost customers without any factual or evidentiary support that Defendants' alleged actions have led—or are likely to lead—to these harms. And more fundamentally, even if AMT has suffered or is likely to suffer these alleged harms, it has not shown "that they are truly irreparable in the sense that they could not be addressed through money damages if [AMT] is successful following a trial on the merits." *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013); *see also Mgmt. Registry, Inc.*, 920 F.3d at 1184 ("But beyond just asking the district court to trust its assessment that these harms are unquantifiable, it never persuasively explained why money damages could not compensate it for these losses as

well."). To the contrary, on the current record, it appears that its claims for lost customers, contracts, goodwill, etc. could be compensated by a damages award. *See Gen. Motors Corp.*, 563 F.3d at 319.

The only meaningful difference on the irreparable harm front from its original motion is that AMT now argues that "Defendants" allegedly misappropriated a trade secret that will cause AMT irreparable harm. The problem is that AMT has not proven the Daily Valid Average list that Defendants allegedly acquired is a trade secret. In fact, AMT provides relatively little information about this list, only that it is some kind of ranking or metrics system for AMT's canvassers. But it is not clear how AMT derives economic benefit from this list not being readily known or how Defendants could obtain economic value from it. In fact, most of AMT's allegations and briefing about the trade secret claim is nothing more than a conclusory recitation of the elements, not the facts that would support a claim. At this stage, AMT has not provided the Court with enough information to conclude that a trade secret exists, let alone that its disclosure will cause irreparable harm. *See MPAY Inc.*, 970 F.3d at 1020.

Like its initial motion, AMT has not come close to demonstrating irreparable harm, so this factor weighs heavily against issuing a TRO. And although AMT's failure to prove irreparable harm is fatal to its TRO request, *see Mgmt. Registry, Inc.*, 920 F.3d at 1184, the Court addresses the other factors for the sake of completeness. *See also Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) ("Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction.").

**II.     AMT has not shown the balance of harms favors issuing a TRO.**

AMT argues that there would be zero harm to Defendants if the Court enters a TRO because they are simply committing unlawful acts. On the other hand, according to AMT, it will suffer

immense continuing harm if a TRO is not entered.

The Court disagrees with AMT's framing. To be sure, if Defendants' actions are unlawful, then issuing a TRO against them would not harm them. But as shown below, it is not clear that AMT is likely to succeed on the merits of all claims. But more importantly, as shown above, AMT has not shown that it will suffer any irreparable harm if an injunction is not issued. It may suffer harm from Defendants' alleged actions, but even if the actions are wrongful, it appears that any continuing harm between now and final judgment could be compensated by a money judgment. *See Denali Summit, LLC*, No. 24-3152, 2025 WL 3000538, at *3 ("If Ameren were to prevail on the merits and if a permanent injunction were appropriate, then Denali Summit's encroachment during the interim period would be redressable with damages."). At best, this factor is neutral.

### III. AMT has shown the success on the merits factor slightly favors issuing a TRO.

AMT explains that the Amended Verified Complaint demonstrates it is likely to succeed on all its claims.

AMT must show a "substantial likelihood of prevailing on the merits" of its claims. *See Phelps-Roper*, 509 F.3d at 485. "While an injunction cannot issue if there is no chance on the merits, the Eighth Circuit has rejected a requirement that a party seeking preliminary relief prove a greater than fifty per cent likelihood that he will prevail on the merits." *Id.* (internal citations and quotation marks omitted). At bottom, AMT must show it has a "fair chance of prevailing." *Id.* (quotation marks omitted).

Like its Verified Complaint, AMT's Amended Verified Complaint is rather conclusory and vague in many spots. The Amended Verified Complaint relies heavily on vague group pleading about Defendants without specifying which Defendants took which actions. This troubles the

Court because Defendants are separate companies and there is no indication—beyond conclusory allegations—that they are working in unity on all actions. To the contrary, the only specific references to Defendants in the Amended Verified Complaint are largely about Synergy and Onset, not LTVD or Vortex. The Court is not inclined to grant broad injunctive relief against all Defendants without specific allegations and evidence about the actions each Defendant took.

Moreover, several of the claims are arguably contradicted by AMT's own record evidence or are deficiently pled. First, on the tortious interference claims, although AMT alleges that Defendants knew of the contracts and business relationships between certain former AMT employees and AMT, purported contracts between the former AMT employees and Synergy and Onset state that the former employees *did not* have any non-competes with other companies. *See* ECF No. 8-23 at 1, 8-24 at 2. This undermines the tortious interference claim somewhat. Second, on the alleged smear video claims, like the Court previously found, the allegations are still too conclusory and arguably contradicted by the record evidence in some ways. *See* ECF No. 7 at 6. Third, on the trade secret claim, as noted above, AMT has not provided the Court with enough facts to conclude that a trade secret exists, let alone which specific Defendant allegedly misappropriated it. At this stage, the Court is not saying that AMT's allegations are not true; it just seems that the facts may be more disputed than AMT is representing in its motion.

On the whole, AMT has probably shown that it may have a fair chance of prevailing on the merits of some of its claims (e.g., its tortious interference and similar claims), but it has shown less of a chance of prevailing on its claims related to the video, trade secret misappropriation, and other alleged wrongs. That is, at least at this stage, AMT has shown a mixed likelihood of success on the merits of some—but not all—claims. Thus, this factor slightly favors issuing a TRO.

### IV. The public interest factor is neutral.

The Court finds that the public interest does not favor either granting or denying the TRO request. Thus, this factor does not weigh in favor of either side.

### V. AMT has not carried its burden.

As noted above, the irreparable harm factor weighs heavily against issuing a TRO. And although the likelihood of success on the merits factor slightly favors issuing a TRO, it is outweighed by the failure on the irreparable harm front. The remaining factors are neutral. So, after balancing the four factors, the Court holds that AMT has not clearly shown entitlement to the extraordinary and drastic remedy of a TRO.

### Conclusion

For the reasons discussed above, AMT's request for a TRO is DENIED. The Court will decide the preliminary injunction motion after it is fully briefed. To that end, Defendants are ORDERED to file any opposition to the motion for a preliminary injunction on or before January 9, 2026. AMT shall then file a reply on or before January 23, 2026. The Court will then set a hearing—as necessary—after reviewing the briefing.

**IT IS SO ORDERED.**

Date: <u>December 2, 2025</u>　　　　　　　　　　　　/s/ Greg Kays
　　　　　　　　　　　　　　　　　　　　　　　　GREG KAYS, JUDGE
　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT